IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Lee Edward Ellerbe,            )<br>                                           )<br>                 Petitioner,    )<br>                                           )<br>      vs.                            )<br>                                           )<br>Warden Stevenson,         )<br>                                           )<br>                 Respondent.  )<br>_____) | Civil Action No. 6:12-1064-GRA-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

       The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

       Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND

       The petitioner is currently confined at the Broad River Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Marlboro County Clerk of Court. The petitioner was indicted at the October 2003 term of court for first-degree burglary (2003-GS-34-1129). Attorney Ralph J. Wilson was initially appointed to represent the petitioner. After a September 2, 2003 hearing, upon the petitioner's motion to relieve counsel, the Honorable Alexander S. Macaulay granted the motion and informed the petitioner he would proceed *pro se* with Mr. Wilson present only as standby counsel. A written order was entered on September 5, 2003 (App. 544-45).

       The case was initially called to trial on October 6, 2003. The matter was recessed, and the petitioner was re-indicted on November 6, 2003, for an August 20, 2002,

incident involving the dwelling of William McInnis (Indictment 2003-GS-34-1129 ) (App. 541-42). The case was called to trial on November 10, 2003, before the Honorable James Williams. The petitioner was present, as well as standby counsel Wilson. The State was represented by Elizabeth R. Munnerlyn, Fourth Circuit Assistant Solicitor. The petitioner was found guilty on November 13, 2003 (App. 470). On November 13, 2003, the court sentenced the petitioner to 25 years imprisonment (App. 474-80).

A notice of appeal was filed at the South Carolina Court of Appeals. Aileen P. Clare of the South Carolina Office of Appellate Defense perfected the appeal by filing a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). In the *Anders* brief, counsel raised the following arguable issue: "Did appellant knowingly and voluntarily waive his right to counsel?" (Final *Anders* Brief of Appellant). The petitioner filed a *pro se* appellate brief on October 12, 2006, asserting: "Did the Court conduct an adequate waiver hearing concerning Appellant's right to counsel?" (*Pro Se* Brief of Appellant). The Court of Appeals dismissed the appeal. *State v. Ellerbe*, Op. No. 2007-UP-287 (S.C. Ct. App. June 7, 2007). In the order, the Court of Appeals stated the following:

> Lee Edward Ellerbe appeals his conviction and sentence for first degree burglary. Ellerbe argues he did not knowingly and voluntarily waive his right to counsel. We disagree. "The Sixth Amendment guarantees criminal defendants a right to counsel." *State v. Gill*, 355 S.C. 234, 243, 584 S.E.2d 432, 437 (Ct. App. 2003). This right, however, can be waived. *Dearybury v. State*, 367 S.C. 34, 39-40, 625 S.E.2d 212, 215 (2006). "The right to proceed pro se must be clearly asserted by the defendant prior to trial." *Id*. "The trial judge has the responsibility to ensure that the accused is informed of the dangers and disadvantages of self-representation, and makes a knowing and intelligent waiver of the right to counsel." *Id*.
>
> On multiple occasions, Ellerbe clearly asserted his right to proceed pro se. Not one, but two judges clearly informed Ellerbe of the dangers and disadvantages of self-representation. On September 2, 2003, Judge Macaulay expressly told Ellerbe that he was entitled to an attorney and that it would be dangerous for Ellerbe to proceed without one;

2

> on October 6, 2003, Judge Williams expressly told Ellerbe that he was entitled to an attorney and that it would be dangerous for Ellerbe to proceed without one. Nevertheless, Ellerbe proceeded pro se. He did so knowingly and voluntarily. Accordingly, after a thorough review of the record, counsel's brief, and Ellerbe's pro se brief, pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Williams*, 305 S.C. 116, 406 S.E.2d 357 (1991), we dismiss this appeal and grant counsel's motion to be relieved.

(Supp. App. 35). The petitioner filed a *pro se* Petition for Rehearing on June 19, 2007. On August 27, 2007, the Court of Appeals denied the petition for rehearing. On October 3, 2007, the remittitur was issued.

On January 25, 2008, the petitioner filed an application for post-conviction relief ("PCR") (App. 547-78). In the application, the petitioner alleged he was being held in custody unlawfully for the following reasons:

> 1. "[D]id not knowingly, intelligently, or voluntarily waive his right to have counsel represent him."
>
> 2. Ineffective assistance of appellate counsel.
>
> 3. Prosecutorial misconduct.
>
> 4. After-discovered evidence.
>
> 5. Trial court error:
>
>> a. Failure to suppress items obtained in violation of the Fourth Amendment from a vehicle search.
>>
>> b. Failure to suppress information obtained from a private device in violation of the Fourth Amendment.
>>
>> c. Allowed testimony of possible prior bad act evidence of Applicant to be presented in violation of the Fifth Amendment.
>>
>> d. Allowed evidence of a separate crime to be introduced with no nexus to the Applicant

3

> e. Allowed evidence to be presented over objection of break within the chain of physical custody.

A hearing was convened at the Darlington County Courthouse on January 13, 2010 (App. 586-615). The petitioner was present and represented by Jocelyn T. Newman. Karen C. Ratigan of the South Carolina Attorney General's Office represented the respondent. The Honorable William H. Seals, Jr., denied relief in an order dated February 1, 2010 (App.617-22). In the order the court rejected the claims on procedural grounds. In particular, the court concluded:

> [T]he Applicant's testimony at the evidentiary hearing revolved around his dissatisfaction with Mr. Wilson. This type of allegation does not satisfy any of the six (6) grounds set forth in section 17-27-20(a). . . . [T]his issue must be dismissed. *See* S.C. Code Ann. § 17-27-70(c) (2003)
>
> This Court finds that, to the extent the Applicant raised the issue of trial court error in his PCR application and through his testimony, this issue is dismissed. *See Drayton v. Evatt*, 312 S.C. 4, 8, 430 S.E.2d 517, 520 (1993) (holding a PCR application cannot assert any issues that could have been raised at trial or on appeal).
>
> This Court notes that, while the Applicant argues in his PCR application that he did not knowingly waive his right to counsel, this issue was reviewed by the Court of Appeals . . . . *See State v. Ellerbe*, Op. No. 2007-UP-287 (S.C. Ct. App. filed June 7, 2007).
>
> This Court notes that, while the Applicant mentioned issues of prosecutorial misconduct and ineffective assistance of appellate counsel in his PCR application, he failed to either: (1) substantiate that issue in the application or (2) offer testimony regarding that issue at the evidentiary hearing . . . . [A]s these issues were abandoned, they are dismissed.
>
> [W]hile the Applicant mentioned an issue of after-discovered evidence in his PCR application, he failed to either: (1) substantiate that issue in the application or (2) offer testimony regarding that issue at the evidentiary hearing. . . . [T]he Applicant failed to articulate or substantiate any portion of the five-part test for after-discovered evidence, so this issue is

> dismissed. *See State v. Mercer*, 381 S.C. 149, 672 S.E.2d 556 (2009).
>
> This Court concludes the Applicant has not met his burden of proof. *See Frasier v. State*, 351 S.C. at 389, 570 S.E.2d at 174.

(App. 620-621).

The petitioner subsequently appealed the dismissal of his PCR action. He was represented by Robert M. Pachak of the Division of Appellate Defense. On July 21, 2010, he filed a *Johnson* Petition for Writ of Certiorari raising as an arguable claim "Whether standby counsel was ineffective in his representation of petitioner?" (*Johnson* Petition for Writ of Certiorari, July 21, 2010). On August 26, 2011, the Supreme Court issued an order denying the petition to be relieved pursuant to *Johnson v. State*, 364 S.E.2d 210 (S.C. 1988) and directed the parties to address the following question: " Did the PCR judge err in finding a claim of ineffective assistance of standby counsel is not proper for PCR?" *Ellerbe v. State of South Carolina*, Order (S.C. August 26, 2011). On September 22, 2011, counsel Pachak filed a petition for writ of certiorari addressing the issue. On January 27, 2012, counsel for the State, Assistant Attorney General Karen Ratigan, filed a Return. On March 9, 2012, the South Carolina Supreme Court issued its letter order denying the petition. *Ellerbe v. State*, Letter Order ( S.C. March 9, 2012). The remittitur was issued on March 27, 2012.

## **FEDERAL HABEAS ACTION**

In his *pro se* petition for writ of habeas corpus now before this court, the petitioner alleges as follows:

> GROUND ONE: That I did not make a knowing and intelligent waiver of my right to counsel.
>
> (a) A fair reading of trial transcript will support my claim.

(Pet. 6).

On August 2, 2012, the respondent filed a motion for summary judgment. By order filed the same day, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975),

5

the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. A second order was filed on September 18, 2012, giving the petitioner through October 8, 2012 to file his response. The petitioner filed an affidavit on August 31, 2012, and his response in opposition on September 28, 2012.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of

the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling

7

> decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo*. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

In his sole ground for relief, the petitioner contends that he did not make a knowing and intelligent waiver of his right to trial counsel. The issue was raised on direct appeal and was addressed on the merits by the state court of appeals. Thus, the petitioner has exhausted his state remedies. Further, it appears that the federal petition was timely filed pursuant to the one-year period of limitations contained in 28 U.S.C. § 2244(d)(1)(A). Accordingly, the petitioner's ground for relief will be addressed on the merits.

"The Sixth and Fourteenth Amendments of our Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." *Faretta v. California*, 422 U.S. 806, 807 (1975). The South Carolina Constitution provides that every criminal defendant has the right to represent himself and makes no distinction between capital and non-capital defendants. *See* S.C. Const. art. I, § 14. Additionally, the United States Supreme Court has interpreted the United States Constitution as providing a right to self-representation. *See Faretta*, 422 U.S. at 821. In *State v. Strarnes*, 698 S.E.2d 604, 610 (S.C. 2010), the Supreme Court of South Carolina held that a *per se* ruling

8

forbidding capital defendants from representing themselves would violate both the South Carolina and the United States Constitutions and thus rejected a request to adopt such a rule in South Carolina. In *State v. Brewer*, the Supreme Court of South Carolina stated:

> The right to proceed *pro se* must be clearly asserted by the defendant prior to trial. *State v. Sims*, 405 S.E.2d 377 (1991); *United States v. Lorick*, 753 F.2d 1295 (4th Cir.1985). The trial judge has the responsibility to ensure that the accused is informed of the dangers and disadvantages of self-representation, and makes a knowing and intelligent waiver of the right to counsel. *Faretta v. California, supra*; *State v. Dixon, supra*. The ultimate test of whether a defendant has made a knowing and intelligent waiver of the right to counsel is not the trial judge's advice, but the defendant's understanding. *Graves v. State*, 309 S.C. 307, 422 S.E.2d 125 (1992). A determination by the trial judge that the accused lacks the expertise or technical legal knowledge to proceed *pro se* does not justify a denial of the right to self-representation; the only relevant inquiry is whether the accused made a knowing and intelligent waiver of the right to counsel. *Faretta v. California, supra*; *United States v. Bennett*, 539 F.2d 45 (10th Cir.1976).

492 S.E.2d 97, 98 (S.C. 1997).

A defendant may waive his right to counsel; however, a waiver of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege. *Edwards v. Arizona*, 451 U.S. 477, 482 (1981); *United States v. Singleton*, 107 F.3d 1091, 1095–96 (4th Cir.1997). Whether a waiver of the right to counsel was knowing and intelligent depends, "in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Singleton*, 107 F.3d at 1097 (citations and quotations omitted). Although no "precise procedure or litany for this evaluation" is required, the court must consider the record as a whole, including "the defendant's background capabilities and understanding of the dangers and disadvantages of self-representation." *Id*. at 1097–98.

9

The respondent submits that the state court did not unreasonably apply the precedent of *Farretta* in denying relief in the direct appeal. This court agrees. In rejecting this same claim, the Court of Appeals of South Carolina held:

> Ellerbe argues he did not knowingly and voluntarily waive his right to counsel. We disagree. "The Sixth Amendment guarantees criminal defendants a right to counsel." *State v. Gill*, 355 S.C. 234, 243, 584 S.E.2d 432, 437 (Ct. App. 2003). This right, however, can be waived. *Dearybury v. State*, 367 S.C. 34, 39-40, 625 S.E.2d 212, 215 (2006). "The right to proceed pro se must be clearly asserted by the defendant prior to trial." *Id*. "The trial judge has the responsibility to ensure that the accused is informed of the dangers and disadvantages of self-representation, and makes a knowing and intelligent waiver of the right to counsel." *Id*.
>
> On multiple occasions, Ellerbe clearly asserted his right to proceed pro se. Not one, but two judges clearly informed Ellerbe of the dangers and disadvantages of self-representation. On September 2, 2003, Judge Macaulay expressly told Ellerbe that he was entitled to an attorney and that it would be dangerous for Ellerbe to proceed without one; on October 6, 2003, Judge Williams expressly told Ellerbe that he was entitled to an attorney and that it would be dangerous for Ellerbe to proceed without one. Nevertheless, Ellerbe proceeded pro se. He did so knowingly and voluntarily. . .

(Supp. App. 35).

The decision of the court was a reasonable application of the precedent in *Faretta* and is factually supported by the record. On September 2, 2003, the petitioner appeared before Jude Macaulay on his motion to relieve his trial counsel and to proceed *pro se*. Judge Macaulay advised the petitioner of the potential risks in proceeding to trial without counsel (Supp. App. 6-22). In particular, Judge Macaulay put the petitioner under oath and advised him that the crime of burglary in the first degree carried a possible sentence of life without parole (*id.* 3-4). The petitioner stated that he had a prior record for receiving stolen goods and had an attorney at that time. The petitioner stated that he was not under the influence of alcohol or other medications and was not aware of any mental

or physical disability that he suffered at that time (*id.* 5-6). The petitioner affirmed that he understood that he had a constitutional right to have an attorney represent him and that he had an attorney appointed to represent him (*id.* 6-7). The petitioner confirmed that he wished to have that attorney relieved or discharged (*id.* 7). He stated that he had been locked up for 13 months and had paid money to a lawyer but he did not get any service from the lawyer. He confirmed that, although the lawyer he had paid was not the lawyer (Mr. Wilson) who had been appointed to him, he still wanted to discharge Mr. Wilson (*id.* 7).

Judge Macaulay told the petitioner that a lawyer might be of valuable assistance to him and that a lawyer might say something that would change the severity of the sentence or seriousness of the charge. Judge Macaulay clarified that "a lawyer might tell the court something that you don't know or can't think of or might not know about that would lessen the severity of the charge or the seriousness of the possible sentence . . . or [m]ight even tell the court something that would have the charges dismissed altogether" (Supp. App. 8). The petitioner responded that he understood (*id.*). In addition, Judge Macaulay advised the petitioner that there may be defenses that the petitioner was not aware of that an attorney could use and an attorney might be able to make motions in the petitioner's case that the petitioner would not know how to make (*id.*). Again, the petitioner indicated that he understood (*id.*). Judge Macaulay asked the petitioner if he wished to proceed without a lawyer, and the petitioner declared yes (*id.* 9).

Counsel Wilson stated that he was appointed in February or March to represent the petitioner. He stated that he saw the petitioner in April and had a lengthy conversation with him on that date, and he was informed by the petitioner that he wanted to represent himself. He stated that the petitioner had maintained that desire ever since (Supp. App. 9-10). Counsel Wilson stated that the petitioner seemed very capable of representing himself, although counsel opined that it was not wise, but it was the petitioner's

11

decision (*id.* 10).  Judge Macaulay noted that he was satisfied that Mr. Wilson was a competent and capable attorney.  He inquired of the petitioner if he had any specific complaint against Mr. Wilson, and the petitioner declared only that he had no confidence in him (*id.* 13).  At that point, Judge Macaulay stated that he would not relieve Mr. Wilson but was going to require that he continue his representation under the Indigent Defense Fund (*id.* 13-14).

Counsel Wilson noted that the petitioner wanted to actually handle the trial himself, though counsel indicated he would be happy to stay on if the court wanted him to do so.  However, counsel stated that it would be difficult to provide representation if the petitioner did not want him (Supp. App.16-17).  Judge Macaulay asked the petitioner if he understood that if he went to trial without an attorney he did so at his own risk, and the petitioner indicated that he understood (*id.* 18).  The judge then asked the petitioner if he wished to relieve his counsel, and the petitioner stated that he did (*id.*).

Judge Macaulay then held that he was going to relieve Mr. Wilson and that the petitioner was going forward to trial during the October 6, 2003, term of court without counsel.  Judge Macaulay told the petitioner that if he decided to retain counsel or ask Mr. Wilson to represent him again he was still going to trial during the October 6 term of court and there would be no continuances (Supp. App. 18-19).  The judge reminded the petitioner that he would face a life sentence and he had no training in a courtroom, and the petitioner stated that he understood (*id.* 19).

Judge Macaulay signed a written order on September 5, 2003, in which he found the petitioner had waived his right to counsel and appointed Mr. Wilson to serve as standby counsel (App. 544-45).

In a hearing on October 6, 2003, Judge Williams was informed of the September 2, 2003, hearing and that the petitioner was representing himself with Mr. Wilson as standby counsel.  Judge Williams was informed by the State that the written

12

order had made clear this was not a situation where there was hybrid representation. Judge Williams then made inquiry of the petitioner concerning these matters. Judge Williams confirmed that Judge Macaulay had explained to the petitioner that it was not a good idea for the petitioner to represent himself as he did not have legal training (App. 508-509). The petitioner stated that he had been involved in criminal court before and had some knowledge as to what goes on in court (*id.* 509). The petitioner confirmed that he understood that the court could not assist him in his defense, and, even if he was making terrible blunders, that the judge could not call it to the petitioner's attention nor make suggestions to the petitioner to make his case clearer to the jury (*id.*). Judge Williams noted that there would probably be things that the petitioner would not understand that would be objectionable and other matters that might need to be brought up (*id.* 509-10). The petitioner stated that he understood, and he declared that he still wanted to represent himself (*id.* 510).

      Judge Williams described the role of standby counsel to both Mr. Wilson and the petitioner. Judge Williams stated that standby counsel was to answer questions the petitioner asked him, to assist the court in any way he can, and to explain legal concepts to the petitioner. However, he stated that Mr. Wilson was only to speak when spoken to and was not to offer any unsolicited advice (App. 511). The judge stated, "If he sees you making a blunder in the case, he's not going to tug on your coattails and say, Mr. Ellerbe, you're making a blunder [and] we need to talk" (*id.*. 512). The petitioner stated that he understood and confirmed that was how he wished to proceed (*id.*). Judge Williams next stated that while he would be kind to the petitioner, he would require the petitioner to follow the same rules of procedure and evidence that he would have to abide by if he was a lawyer. The petitioner confirmed that he understood and that he still wanted to represent himself (*id.* 512-13). The case proceeded to trial on November 10, 2003, with the petitioner representing himself with Mr. Wilson as standby counsel.

In his petition before this court, the petitioner argues that he did not waive the assistance of counsel voluntarily but instead "felt compelled to do so by circumstances beyond his control" (pet. resp. m.s.j. 5). Based on the record below, it is clear the petitioner knowingly, intelligently, and voluntarily waived his Sixth Amendment right to counsel. Both Judge Macaulay and Judge Williams informed the petitioner of the dangers of self-representation and questioned him thoroughly as to his understanding of those dangers and whether he still wished to proceed *pro se*. The record shows that the circuit court complied with *Faretta* before allowing the petitioner to represent himself, and the Court of Appeals reasonably concluded that the petitioner knowingly and voluntarily proceeded *pro se.* As the petitioner has failed to show that the decision was contrary to, or involved an unreasonable application of, Supreme Court precedent or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, federal habeas corpus relief should be denied.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 17) be granted.

Kevin F. McDonald
United States Magistrate Judge

January 7, 2013
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).